# In the United States Court of Federal Claims

No. 15-719C

(Filed Under Seal: September 27, 2017)

(Reissued for Publication: October 2, 2017)[1]

```
*************************************
                                    *
TENDER YEARS LEARNING CORP.,        *
                                    *
              Plaintiff,            *
                                    *   Claim for Bid and Proposal Preparation
v.                                  *   Costs; Attorneys' Fees; Implied-In-Fact
                                    *   Contract; Prejudice; Motion to Dismiss;
                                    *   Mootness; Damages.
THE UNITED STATES,                  *
                                    *
              Defendant.            *
                                    *
*************************************
```

*John J. O'Brien*, with whom was *Andrew Wible*, Cohen Mohr, LLP, Washington, D.C., for Plaintiff.

*Douglas G. Edelschick*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *Megan E. O'Rourke* and *Marie C. Scott*, Of Counsel, Children, Families, and Aging Division, U.S. Department of Health and Human Services, Washington, D.C., for Defendant.

### OPINION AND ORDER

WHEELER, Judge.

      The parties in this breach of implied-in-fact contract case have filed cross-motions for judgment on the administrative record pursuant to Rule 52.1 of the Court of Federal Claims ("RCFC"). Plaintiff Tender Years Learning Corporation ("Tender Years"), the

---

[1] The Court issued this decision under seal on September 27, 2017, and invited the parties to submit proposed redactions of any proprietary, confidential, or other protected information on or before October 4, 2017. None of the parties proposed any redactions. Thus, the Court reissues the opinion in full.

losing bidder on a funding contract to run a Head Start program in Macon, Bibb and Monroe Counties in Georgia, alleges primarily that the United States Government, through the Department of Health and Human Services ("HHS" or "the agency"), breached its implied-in-fact contract with Tender Years to fairly and honestly consider Tender Years' bid when it canceled its 2014 Funding Opportunity Announcement ("2014 FOA") and denied Tender Years the funding award. Tender Years also alleges that it suffered prejudice as a result of the cancelation and seeks bid and proposal costs, as well as attorneys' fees.

After considering the administrative record and the parties' arguments in court and in their filings, the Court finds that HHS acted with a rational basis and in accordance with the law in canceling its 2014 FOA and did not breach its implied-in-fact contract with Tender Years. Further, the Court finds that Tender Years failed to show that it suffered any prejudice from the cancelation. Accordingly, the Government's cross-motion for judgment on the administrative record is GRANTED, and Tender Years' motion is DENIED.

## Background

Tender Years originally brought this case because it bid for and was denied funding from the Government, through HHS, to run a Head Start program in Macon, Bibb and Monroe Counties in Georgia. Head Start programs were initiated by the Head Start Act, 42 U.S.C. § 9831 *et seq.*, to "promote the school readiness of low-income children by enhancing their cognitive, social, and emotional development." 42 U.S.C. § 9831. Pursuant to the Head Start Act, HHS awards grants to qualifying agencies, which then carry out programs according to the Act's guidelines. See 42 U.S.C. §§ 9833, 9836. HHS must examine Head Start agencies every five years to determine whether they are continuing to meet the Act's standards. 42 U.S.C. § 9836(c)(7)(A). If an agency is "delivering a high-quality and comprehensive Head Start program," its grant is renewed for another five-year term. Id. § 9836(c)(7)(A)(i). If it is not, then the grantee must compete in an open competition with other bidders to secure a further five-year grant. Id. §§ 9836(c)(7)(A)(ii); 9836(d)(1).

At the end of its five-year term, Macon-Bibb Economic Opportunity Council, Inc. ("Macon Bibb")—the incumbent grantee for Macon, Bibb and Monroe Counties in Georgia—received notice from HHS that Macon Bibb was not administering its Head Start program at the required quality level. AR 262–64. HHS therefore created an open competition for Head Start grant funding in Macon, Bibb and Monroe counties, which it publicized via its 2014 FOA. Id. at 4–69. Tender Years competed in the 2014 FOA, and HHS notified Tender Years in April 2015 that it was the "preliminary selected awardee." Id. at 765–73. Tender Years then began working on plans to transition the Head Start

contract from Macon Bibb to itself, and continued to seek information from HHS officials during this process. Id. at 891, 922. At the same time, Macon Bibb expressed concerns that Tender Years did not have prior experience running a Head Start program or having to comply with federal standards. Id. at 787–801, 867, 3347–49. After further investigation and discussions with Tender Years, HHS reversed course in June 2015 and decided to eliminate Tender Years as a potential grantee in the 2014 FOA. Id. at 884–88. HHS notified Tender Years of its decision by letter on July 7, 2015. Id. at 904.

HHS based its decision on the fact that Tender Years (1) had no board of directors at the time of its application; and (2) lacked qualified existing staff to operate classrooms. Id. at 885. Tender Years maintained that it did in fact have a board, id. at 3339, 3456–61, 3476–77, and that it would have secured the necessary qualified staff if HHS had not previously prevented it from contacting Macon Bibb employees. Id. at 892, 924.

After rejecting Tender Years' bid, HHS canceled the 2014 FOA without selecting a five-year grantee. Id. at 884–88. When HHS does not select a five-year grantee after a solicitation, it must "designate a qualified agency to carry out the Head Start program in the community on an interim basis" until it designates a five-year grantee through another competitive solicitation. 42 USC § 9836(f). Although Macon Bibb's deficient performance was the reason HHS opened the solicitation in the first place, the agency designated Macon Bibb as the interim grantee until a new competition was completed. AR 885, 895–900.

Shortly thereafter, Tender Years filed a complaint in this Court invoking the Court's bid protest jurisdiction pursuant to 28 U.S.C. § 1491(b). See Compl., Dkt. No. 1. During briefing of the case in early September 2015, Tender Years introduced a supplemental appendix containing new information that was not provided to HHS at the time of Tender Years' original application. See Dkt. No. 31. The supplemental index included information related to Tender Years' board of directors, as well as minutes from previous board meetings and resumes of applicants for staff positions. AR 3364–3430, 3456–61. Upon receiving this new information, HHS decided to take corrective action and rescinded its decision to cancel the 2014 FOA. Id. at 3482–83. The agency then reopened its negotiations with Tender Years to determine whether it should grant Tender Years the award. Id. at 3484.

HHS engaged in ongoing negotiations with Tender Years from mid-September through late-November 2015, communicating mainly via email and conducting a site visit to Tender Years' facilities. Id. at 3484–3821. These negotiations, however, were brought to a sudden halt in October 2015, after the United States District Court for the District of Columbia enjoined the Government's corrective action and negotiations with Tender Years at Macon Bibb's request. See Dkt. No. 53. In March 2016, HHS decided to cancel the

2014 FOA for a second time, as it was prevented from negotiating with Tender Years and the initial applications it considered for the 2014 FOA were now stale. AR 3824–27. Two months later, in May 2016, HHS published a new Funding Opportunity Announcement ("2016 FOA") and opened a new competition for the five-year grant. Id. at 4298–4372. The agency received applications from both Macon Bibb and Tender Years, along with one other applicant. Id. at 4617–4869, 4870–5046, 4588–4616. While HHS was in the process of reviewing the new applications, it awarded a series of interim grants to Macon Bibb, funding the organization through December 2016. Id. at 5433–44. After a panel of new reviewers examined the 2016 applications, Macon Bibb received the highest score and HHS commenced negotiations thereafter. Id. at 5060–64. On December 2, 2016, HHS awarded the five-year grant to Macon Bibb.[2] Id. at 5418.

Procedural History

Tender Years filed its original action seeking to enjoin the interim grant and to reopen the 2014 FOA on July 10, 2015. See Compl., Dkt. No. 1. The Court denied Tender Years' motion for a temporary restraining order on July 20, 2015. Dkt. No. 17. The Government then moved to dismiss the case on August 7, 2015, arguing mainly that this Court lacked subject matter jurisdiction over Tender Years' claims because those claims related to a grant, not a procurement within the meaning of 28 U.S.C. § 1491(b)(1). Dkt. No. 23. Before the Court ruled on the Government's motion, the Government apprised the Court on September 15, 2015, that it intended to take corrective action by reopening the 2014 FOA and restarting negotiations with Tender Years. Dkt. No. 36. The Court therefore stayed proceedings in this case on September 16, 2015, pending the outcome of those negotiations. Dkt. No. 37. The Government then moved once again to dismiss this case on September 21, 2016, arguing that Tender Years' claims had become moot because the Government had reopened the 2014 FOA. Dkt. No. 38.

Meanwhile, Macon Bibb had filed an action against the Government in the United States District Court for the District of Columbia. See Macon-Bibb Cnty. Econ. Opportunity Council v. U.S. Dep't of Health & Human Servs., No. 15-cv-01850-RBW (D.D.C.). In its action, Macon Bibb sought to enjoin the Government's corrective action and negotiations with Tender Years. See Dkt. No. 53. The District Court entered a preliminary injunction order on November 20, 2015, that enjoined the Government's corrective action. Id. Tender Years, as an intervenor in the District Court action, filed an appeal to the D.C. Circuit. Id. Because the corrective action was the basis for the Government's mootness argument in its pending motion to dismiss, this Court once again entered a stay in this action on December 2, 2015. Id.

---

[2] Tender Years did not file a bid protest pursuant to 28 U.S.C. § 1491(b) in response to Macon Bibb receiving the full five-year grant.

4

After further proceedings in the District Court action, the Government again closed the 2014 FOA and agreed to award an interim grant to Macon Bibb, so the parties voluntarily dismissed the District Court action. See Dkt. No. 62. Tender Years also voluntarily dismissed its appeal before the D.C. Circuit. See Dkt. No. 58. This Court therefore lifted the stay on proceedings in this case on May 5, 2016. Dkt. No. 62.

On May 9, 2016, Tender Years moved to amend its complaint pursuant to RCFC 15(a)(2) and to bifurcate the issues of entitlement and damages. Dkt. No. 64. In its amended complaint, Tender Years removed all bid protest claims from its original complaint and alleged solely implied-in-fact contract damages. See Am. Compl. (Counts I–V). The Government opposed Tender Years' motion on the grounds that the proposed amendments would be futile. Dkt. No. 68. On September 12, 2016, this Court granted Tender Years' motion to amend its complaint and to bifurcate the issues of entitlement and damages. See Tender Years Learning Corp. v. United States, 128 Fed. Cl. 265, 272 (2016).

On April 14, 2017, Tender Years filed its motion for judgement on the administrative record. Dkt. No. 84. The Government filed its motion to dismiss, or, in the alternative, cross-motion for judgment on the administrative record, on June 5, 2017. Dkt. No. 87. The Court heard oral argument on the cross-motions on September 14, 2017.

Discussion

This Court has jurisdiction over all claims arising out of "any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). When a bidder submits a bid in a competitive solicitation such as the one at issue in this case, an implied-in-fact contract arises between the bidder and the Government to fairly and honestly consider the bid. FFTF Restoration Co. v. United States, 86 Fed. Cl. 226, 242 (2009). Bid protests based upon an implied-in-fact contract claim, like the one at issue here, are subject to the same standard of review as traditional bid protests brought under 28 U.S.C. § 1491(b). See Commc'n Constr. Servs. v. United States, 116 Fed. Cl. 233, 255 (2014) ("Despite the different procedural mechanisms, the standard of review for resolving bid protests is substantially the same whether the protest is brought under § 1491(a) as a breach of an implied contract or as a traditional bid protest under § 1491(b)."). In a Section 1491(b) protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4) (2012); 5 U.S.C. § 706 (2012). Therefore, the Court will likewise review this Section 1491(a) protest under the APA.

Under the APA, this Court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706(2)(A) (2012); see Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004). An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001). Further, an agency must articulate a "rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citation omitted). The Court's review is "highly deferential" to the agency as long as the agency has rationally explained its award decision. Bannum, Inc. v. United States, 91 Fed. Cl. 160, 169–70 (2009).

Even if the agency acted without a rational basis, the Court cannot grant relief unless the agency's action prejudiced the protestor. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Erroneous agency action prejudices a protestor if, but for the agency's error, there was a "substantial chance" that the agency would have awarded the contract to the protestor. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); see also Bannum, 404 F.3d at 1353.

Therefore, to prevail, Tender Years must show that (1) HHS engaged in arbitrary and capricious conduct when it canceled the 2014 FOA and denied Tender Years the funding award; and (2) there was a substantial chance that Tender Years would have received the five-year grant but for HHS' conduct. In its motion for judgement on the administrative record, Tender Years argues that HHS acted arbitrarily and capriciously by treating Tender Years' and Macon Bibb's bids unequally and by relying on erroneous information to support its cancelation of the 2014 FOA. Pl.'s Mot. at 19–21, 31–32. But for these errors, Tender Years argues that there was a substantial chance it would have received the grant. Pl.'s Rep. at 17–29. In its motion to dismiss, or, in the alternative, cross-motion for judgement on the administrative record, the Government first argues that Tender Years' claims are moot and the Court therefore lacks subject matter jurisdiction over its claims. Def.'s Mot. at 25–31. The Government then argues in the alternative that HHS articulated a rational basis for its decision to cancel the 2014 FOA and deny Tender Years the award and that Tender Years failed to demonstrate prejudice from any alleged error. Id. at 34–38, 48–51. The Court will first address the jurisdictional issue and then turn to the merits of the case.

A. The Court Has Subject Matter Jurisdiction Over Tender Years' Claims.

1. Standard of Review

Courts have no subject matter jurisdiction over moot claims. See CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554, 556 (2000) (citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)). Therefore, the Court's analysis of the Government's mootness argument

is substantially the same as it would be for a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1). See Tech. Innovation, Inc. v. United States, 93 Fed. Cl. 276, 278 (2010). When a defendant files a motion under RCFC 12(b)(1), the Court must "assume all factual allegations to be true and . . . draw all reasonable inferences in plaintiff's favor." Wurst v. United States, 111 Fed. Cl. 683, 685 (2013) (quoting Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)). However, a plaintiff must establish that jurisdiction exists "by a preponderance of the evidence." Id. (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

### 2. Tender Years' Implied-in-Fact Contract Claims Are Not Moot.

Although mootness is part of the "case or controversy" requirement in Article III of the United States Constitution, see Gerdau Ameristeel Corp. v. United States, 519 F.3d 1336, 1340 (Fed. Cir. 2008), the doctrine also applies in this Article I Court. See Brookfield Relocation Inc. v. United States, 113 Fed. Cl. 74, 77 (2013). A case should be dismissed as moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Rice Servs., Ltd. v. United States, 405 F.3d 1017, 1019 n.3 (Fed. Cir. 2005) (citation omitted). The parties lack such an interest if the defendant's alleged act will not recur, and if intervening events have "completely and irrevocably eradicated the effects of the alleged violation." CW Gov't Travel, 46 Fed. Cl. at 557 (quoting Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

For example, bid protest actions brought pursuant to this Court's jurisdiction under 28 U.S.C. § 1491(b)(1) may become moot if the government takes corrective action by canceling the challenged procurement and reopening the bidding process. See, e.g., Savantage Fin. Servs., Inc. v. United States, 118 Fed. Cl. 487, 491 (2014) (finding that defendant's corrective action mooted plaintiff's claim in bid protest). The corrective action eradicates the effects of an unfair outcome in the bidding process and may allow the plaintiff bidder once again to compete for the government contract at issue.

However, the same cannot be said of claims, like Tender Years', that invoke this Court's jurisdiction under 28 U.S.C. § 1491(a)(1). Contract damages are different from the relief that plaintiffs seek under Section 1491(b)(1) in that they are not easily mooted. Where a plaintiff competing in a solicitation seeks damages resulting from the government's breach of an implied-in-fact contract under Section 1491(a)(1), the Government's corrective action does not render the plaintiff's claims moot. Instead, the Government can only moot a breach of contract claim by paying all of the plaintiff's claimed contract damages or performing under the contract in full. See Landram v. United States, 229 Ct. Cl. 855, 856 (1982) ("Defendant has fully performed the contracts and, as such, has forestalled any claim for breach of contract."); cf. Gates v. Towery, 430 F.3d 429, 432 (7th Cir. 2005) ("To eliminate the controversy and make a suit moot, the

defendant must satisfy the plaintiffs' *demands*; only then does no dispute remain between the parties.") (emphasis in original). This outcome is logical in the context of a solicitation like the 2014 FOA, as canceling and restarting the solicitation does not make a plaintiff's potential contract damages from the original solicitation disappear.

Here, the Government argues that Tender Years' claims are moot because the administrative record and its motions show that it fully performed its implied-in-fact contract to treat Tender Years' bid honestly and fairly and that Tender Years did not suffer prejudice from the agency's decision. Def.'s Mot. at 25–31. However, whether the Government fully performed its duties under the contract and whether Tender Years suffered prejudice are both directly contested in this case and thus, are questions for the Court to decide on the merits. The Government's argument remains inappropriate to contest jurisdiction. See Tender Years Learning Corp., 128 Fed. Cl. at 270–71. As such, Tender Years' implied-in-fact contract claims are not moot, and the Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1491(a)(1).

> B. HHS has Articulated a Rational Basis for Canceling the 2014 FOA and Denying Tender Years Funding.

Tender Years argues that HHS' decision to cancel the 2014 FOA in June 2015 and to deny funding was arbitrary and capricious and thus, constituted a breach of the duty to honestly and fairly consider Tender Years' bid. To support its argument, Tender Years lists a host of "arbitrary and capricious conclusions" made by HHS to justify the cancelation: (1) that Tender Years lacked a board of directors as required by the Head Start Act, Pl.'s Mot. at 20–22; (2) that Tender Years could not provide qualified staff and personnel, id. at 22–26; (3) that Tender Years lacked sufficient classroom facilities, id. at 27–29; and (4) that there was an insufficient amount of time to transition funding from Macon Bibb to Tender Years. Id. at 30–35. Tender Years also alleges that the agency's decision to provide Macon Bibb with an interim grant after the 2014 FOA cancelation "violated applicable law." Id. at 35–36. However, the administrative record makes clear that the agency based its decision to cancel the 2014 FOA and deny Tender Years funding on only two of the conclusions Tender Years takes issue with: the lack of a board of directors, and the lack of qualified staff and personnel. AR 885. The agency articulated as much in its Revised Decision Memorandum, dated June 17, 2015:

> In April 2015, the ACF Regional office began applicant negotiations with Tender Years Learning Corporation who is the next ranked application organization. The negotiation conversations revealed that Tender Years does not have an existing organizational capacity to begin providing Head Start services on July 1, 2015. The Tender Years application points

8

> to its existing child care staff as a means of demonstrating the capacity to employ staff with early childhood experience, but only a few of the Tender Year existing staff have the required qualifications to operate Early Head Start and/or Head Start classrooms. In negotiations the Tender Years executive director stated they were relying on the ability to recruit the existing staff of the incumbent grantee. Additionally, the executive director confirmed that Tender Years currently does not have a governing body or board as required by the Head Start Act. While the application committed to establishing a board and governing body, negotiations yielded this critical step would not be completed prior to the grant award. In summary, the Office of Head Start has assessed the risk of awarding Tender Years Learning, Inc. is too significant based on the aforementioned factors.

Id. Thus, aside from the board, staff and interim grant conclusions, the Government correctly asserts that Tender Years' arguments related to the agency's other purported conclusions are inapposite and irrelevant the merits of this case. See Def.'s Mot. at 44. Accordingly, the Court need only address the board, staff and interim grant conclusions.

> 1. The Agency's Conclusion that Tender Years Lacked a Board of Directors was Neither Arbitrary nor Capricious.

Tender Years alleges that HHS erroneously and incorrectly concluded it did not have a governing board as required by the Head Start Act, and that its application received adverse treatment as a result. Pl.'s Mot. at 15. First, Tender Years argues that it did not violate the Head Start Act by failing to have a board in place at the time it was named the preliminarily selected awardee because the law makes clear that a governing board must be in place "[u]pon receiving designation as a Head Start agency," 42 U.S.C. § 9837(c), and Tender Years had not yet been designated as such. Pl.'s Mot. at 15. Second, Tender Years claims that it did in fact have a governing body in place by July 1, 2015—the deadline imposed by HHS for Tender Years to be in compliance with all applicable Head Start statutes and regulations. Id. at 21–22. To support its arguments, Tender Years directs the Court to litigation declarations and minutes from a May 18, 2015 board meeting, as well as a letter dated June 24, 2015, where Tender Years indicates that it "had identified individuals that have agreed to serve on [the] Board" during a conference call with HHS. AR 892 (June letter); Dkt. No. 31 (litigation declarations); AR 3456–61 (board minutes). However, Tender Years' arguments are unavailing and without merit.

9

As to its first argument, Tender Years correctly argues that it was not in violation of the Head Start Act by failing to have a board in place at the time it was designated as the preliminary selected awardee. However, the allegation that HHS found Tender Years to be in non-compliance with the Act and denied it funding as a result is misguided and unsupported by the administrative record. The agency never found Tender Years to be in violation of the Head Start Act; rather, it did not believe Tender Years could be in compliance with the statute by July 1, 2015, when funding was set to begin. AR 885. As such, the agency concluded that this risk was "too significant" to make the award to Tender Years. Id. This conclusion is both rational and reasonable. The terms of the 2014 FOA made clear that all applicants where to submit a list of board members and to demonstrate a capacity "to effectively implement a system of governance." Id. at 35. Tender Years failed to submit any such list; instead, its application merely promised to create a board in the future without listing any potential board members. Id. at 353.

Additionally, with respect to its second argument, Tender Years failed to furnish the agency with any evidence that it had created a board or that the board had in fact met prior to HHS' decision to cancel the 2014 FOA and deny Tender Years funding in June 2015. During the conference call referenced in the June letter, Tender Years informed HHS that it "had identified individuals that have agreed to serve on [the] Board." Id. at 892. This assurance, however, is vague at best, as it neither confirms definitive appointments to the board nor indicates that any board meetings had occurred.

With regard to the May 18, 2015 board meeting minutes and declarations, Tender Years did not make these documents known or available to the Government until September 2015, when it filed a supplemental appendix shortly after commencing litigation in this matter. See Dkt. No. 31; AR 3456–61. The Government cannot be penalized for failing to consider documentation it was unaware existed until September 2015, well after it made its decision to cancel the 2014 FOA. Tender Years counters that the agency should have requested this documentation on its own initiative as the compliance date grew nearer, but fails to provide any reason or rationale for its own failure to turn these documents over to the agency—documents that would have only helped its application—immediately after the board meeting occurred. Instead, the Government justifiably relied on the record before it at the time of its 2015 decision. Given the highly deferential standard of review in Section 1491(a) bid protests described above and the fact that the agency did not receive the evidence it needed from Tender Years regarding board formation by the July 1, 2015 compliance deadline, the Court finds that the agency's conclusion that Tender Years lacked a board of directors was neither arbitrary nor capricious.

> 2. The Agency's Conclusion that Tender Years Lacked Qualified Staff was Neither Arbitrary nor Capricious.

Tender Years next alleges that HHS erroneously and incorrectly concluded that Tender Years lacked qualified staff and personnel to be awarded the five-year grant. Pl.'s Mot. at 22. To support this allegation, Tender Years first claims that HHS "actively prevented" it from hiring qualified incumbent personnel. Id. at 22–24. Tender Years also argues that HHS treated Macon Bibb and Tender Years unequally with regard to hiring incumbent staff. Id. at 24–25. Finally, Tender Years asserts that HHS provided no basis for its conclusion that only a few of Tender Years' existing staff members had the proper qualifications and certifications as required by the Head Start Act. Id. at 25–27. Here, the Government has sufficiently demonstrated that Tender Years misconstrues the record in making its arguments.

First, HHS never raised an issue with Tender Years' ability to hire qualified incumbent staff members. In fact, HHS rated Tender Years' plan to recruit new staff members as a "strength." AR 757. Rather, the crux of the agency's concerns related to the qualifications of Tender Years' existing staff, not of its future staff. The administrative record supports this notion, as the agency's June 2015 memo explaining its cancelation of the 2014 FOA states, "[t]he negotiation conversations revealed that Tender Years does not have an *existing* organizational capacity to begin providing Head Start services on July 1, 2015." Id. at 885 (emphasis added). While HHS may have halted Tender Years' ability to communicate and continue negotiations with potential new hires, the agency already gave Tender Years proper credit for its efforts and was concerned with only the existing staff. Accordingly, Tender Years' first argument is without merit.

Tender Years' second argument is also meritless. As the Court discusses above, the administrative record makes clear that HHS did not possess concerns over Tender Years' ability to hire incumbent staff and personnel. Def.'s Mot. at 42–42. Therefore, Tender Years' argument that HHS should have denied funding to Macon Bibb on an interim basis over its reservations about using the same incumbent staff as Tender Years is counterfactual and unavailing.

Lastly, contrary to Tender Years' assertions, there is ample evidence in the administrative record to support HHS' conclusion that the majority of Tender Years' existing staff and personnel did not meet the qualification standards required by the Head Start Act. Tender Years' own application admits that only a quarter of its existing staff had the degrees required under the Act, with another quarter possessing the required "child development" credentials. Id. at 43; AR 338, 342–43. Further, Tender Years furnished HHS with only five staff resumes as evidence of these qualifications. AR 392, 397, 398–401. While the agency could have requested more evidence during "Phase II" of the

11

application process, the fact alone that only one-half of Tender Years' existing staff possessed the degrees and certifications required under the Head Start Act serves as a rational basis in and of itself to conclude that Tender Years lacked the proper qualified staff to be in compliance with the Act by July 1, 2015. Thus, the Court finds that HHS did not act arbitrarily or capriciously in reaching its conclusion regarding Tender Years' lack of qualified staff.

> 3. The Agency's Decision to Award an Interim Grant to Macon Bibb did not Violate Applicable Law.

Tender Years also takes issue with HHS' decision to award Macon Bibb an interim grant after canceling the 2014 FOA. Pl.'s Mot. at 35–36. Section 9836(f) of the Head Start Act states:

> If no agency in a community is designated under subsection (d), and there is no qualified applicant in the community, the Secretary shall designate a qualified agency to carry out the Head Start program in the community on an interim basis until a qualified applicant from the community is designated under subsection (d).

42 U.S.C. § 9836(f). Tender Years contends that because Macon Bibb was not deemed "qualified" for the five-year grant under subsection (d), it likewise cannot be considered "qualified" for the interim grant under subsection (f). Pl.'s Mot. at 35–36. However, this cannot be an accurate reading of the statute. Under such a reading, there would be no interim awardee since all of the applicants for the 2014 FOA were deemed unqualified for the five-year grant. This result would create too large of a disruption in the administration of services under the Head Start program. Additionally, the statute neither indicates nor suggests on its face that an interim grant awardee must possess the same level of qualification as the five-year grant awardee. Thus, while Macon Bibb may not have been deemed "qualified" to receive the full five-year grant, the agency's decision to award it the interim grant while the re-competition played its course was not in violation of applicable law, especially considering Macon Bibb's status and experience as the incumbent grantee.

> 4. The Agency's Decision to Cancel the 2014 FOA and Deny Tender Years Funding did not Lack a Rational Basis and thus, was Neither Arbitrary nor Capricious.

Having addressed the parties' arguments above, the Court finds that HHS did not lack a rational basis in canceling the 2014 FOA and denying Tender Years funding and hence, did not breach its implied-in-fact contract to fairly and honestly consider Tender

Years' bid.  Given the substantial grant amount of $5 million and the fact that Tender Years had not previously participated in Head Start programs, HHS' concerns over Tender Years' lack of corporate governance and qualified staff were rational and are entitled to deference. While Tender Years contends that it should not have made it to "Phase II" of the application process if the agency truly held these concerns, the entire purpose of Phase II is to conduct further investigation into the preliminarily selected awardee.  The agency did just that: it further evaluated the contents of Tender Years' application, had an independent panel of reviewers identify areas of weakness, and, based on those weaknesses, made a rational decision to withhold the award from Tender Years and cancel the 2014 FOA.  Accordingly, the agency's decision was neither arbitrary nor capricious and HHS did not breach its implied-in-fact contract with Tender Years.

### C. Tender Years Fails to Establish any Prejudice from the 2014 FOA Cancelation.

In the alternative, even if the Court did find that HHS breached its implied-in-fact contract with Tender Years, Tender Years has failed to show that it suffered any prejudice from the 2014 FOA cancelation and its denial of funding.

Erroneous agency action prejudices a protestor if, but for the agency's error, there was a "substantial chance" that the agency would have awarded the contract to the protestor.  Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); see also Bannum, 404 F.3d at 1353.  The party suffering prejudice is entitled to recover bid and proposal costs, as these costs are "a type of reliance damages intended to reimburse an offeror for proposal costs that are 'wasted' by a breach." Gentex Corp. v. United States, 61 Fed. Cl. 49, 50 (2004).

Tender Years asserts "it is a near certainty" that it would have received the five-year grant award but for the 2014 FOA cancelation.  Pl.'s Rep. at 29.  However, as the Government notes, this argument is indeed speculative and counterfactual.  See Def.'s Rep. at 13.  The entire 2014 FOA was canceled in the first place because of concerns over Tender Years' application, and HHS made clear that Tender Years' selection as the preliminarily selected awardee did not guarantee that it would ultimately receive the final award.  AR 765.

Tender Years also cannot establish that its bid and proposal costs were "wasted." As Tender Years concedes, it used "substantially the same" application to re-apply for the same five-year grant when the re-competition opened in 2016.  Pl.'s Rep. at 12; AR 5063. Thus, Tender Years did not incur any "wasted" costs.  As the administrative record shows, the agency conducted a fair and honest evaluation of 2016 applicants, and Tender Years lost to Macon Bibb after a new, independent panel scored a fresh set of applications.  AR 5063.  Further, Tender Years cannot claim that its initial efforts were "wasted" in its 2014

13

application. HHS vigorously reviewed Tender Years' application, made a rational decision to deny it funding, and then voluntarily reopened negotiations once Tender Years provided the agency—through the commencement of litigation—with new documentation it should have produced during its original negotiations. The only reason these subsequent negotiations failed is because of the injunction issued by the District Court for the District of Columbia, a decision beyond either parties' control. See <u>Macon-Bibb Cnty. Econ. Opportunity Council</u>, No. 15-cv-01850-RBW. Accordingly, Tender Years has failed to show it suffered any prejudice as a result of the 2014 FOA cancelation and its denial of funding.

## Conclusion

In sum, the Court finds that Tender Years has not shown that HHS' decision to cancel the 2014 FOA and deny it funding lacked a rational basis, or that Tender Years suffered any prejudice from the cancelation. The Court therefore DENIES Tender Years' motion for judgment on the administrative record and GRANTS the Government's cross-motion for judgment on the administrative record. The Clerk shall enter judgment in favor of the Government. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge